**ACME PRINTING INK COMPANY, a Delaware corporation, Plaintiff,**

v.

**MENARD, INC., a Wisconsin corporation; Ed's Masonry and Trucking, Inc., a Wisconsin corporation; Edward J. Fadrowski; Anthony Ivancich; Bel-Aire Enterprises, Concrete Contractors, Inc., a Wisconsin corporation; Brey's Saw Shop, a partnership; Dan Brey; Max Brey; Cambridge Chemical, Inc., a Wisconsin corporation; Cardinal Fabricating Corp., a Wisconsin corporation; Chromium, Inc., a Wisconsin corporation, John A. Davis, Jr.; Commercial Heat Treating, Inc., a Wisconsin corporation; Herb Engel Realty Co., Inc., a Wisconsin corporation; Hartwig, Inc., a Wisconsin corporation,**

**d/b/a Hartwig Exhibitions; Helmut's Building Service, Inc., a Wisconsin corporation; Kramer Brass Foundry, Inc., a Wisconsin corporation; Dennis J. Cortte, d/b/a Layton Motor Sales; Jerry Lesperance, d/b/a Lesperance Construction; Lincoln Savings Bank, S.A., f/k/a Lincoln Savings & Loan Association, a Wisconsin chartered savings and loan association; Vernin Tretow, d/b/a Loomis Center Garage; Lubricants, Inc., a Wisconsin corporation; Richard W. Drexler; Robert Howell; Miller Tilt-Top Trailer, Inc., a Wisconsin corporation; Lewis Miller; Robert Bera; Pemper Engineering Co., Inc., a Wisconsin corporation; Frank Povlick, Inc., a Wisconsin corporation; Charles E. Rickheim; Service Painting Corp., a Wisconsin corporation; Sun Control Corporation, a/k/a Milwaukee Venetian Blind Co., a Wisconsin corporation; Supreme Casting, Inc., a Wisconsin corporation; Texaco, Inc., a foreign corporation; Wauwatosa Savings & Loan, a loan association; Williams Petroleum, Inc., a Wisconsin corporation; Ranger Insurance Company, a Delaware corporation; Defendants,**

v.

**TRAVELERS COMPANIES, INC., a Connecticut corporation and Home Insurance Co., Inc., a New Hampshire corporation, Third Party Defendants,**

and

**CAMBRIDGE CHEMICAL, INC., a Wisconsin corporation, Third Party Plaintiff,**

v.

**HARTFORD ACCIDENT & INDEMNITY CO., a Connecticut corporation, Third Party Defendant.**

No. 89–C–834.

United States District Court, E.D. Wisconsin.

Oct. 21, 1992.

Order Amending Decision and Order Nov. 5, 1992.

William S. Roush, Jr., Ted A. Warpinski, Friebert, Finerty & St. John, Milwaukee, WI, for plaintiff.

Robert W. Corey, Menard, Inc. Legal Dept., Eau Claire, WI, Michael D. Fischer, Michael D. Flanagan, Foley & Lardner, Milwaukee, WI, for Menard, Inc.

Edward R. Cameron, Milwaukee, WI, for Ed's Masonry and Trucking Edward J. Fadrowski [deceased].

Anthony Ivancich, pro se.

Timothy J. Strattner, Schellinger & Doyle, Brookfield, WI, for Bel–Aire Enterprises Concrete Contractors, Inc.

Bruce C. O'Neill, Fox, Carpenter, O'Neill & Shannon, Milwaukee, WI, for Cambridge Chemical, Inc.

Daniel M. Leep, McNally, Maloney & Peterson, Milwaukee, WI, for Cardinal Fabricating Corp. and Robert Howell.

William Wiseman, O'Neil, Cannon & Hollman, Milwaukee, WI, for Chromium, Inc.

James A. Baxter, Mitchell, Baxter & Zieger, Milwaukee, WI, for Kramer Brass Foundry, Inc.

William H. Harbeck, Quarles & Brady, Milwaukee, WI, for John A. Davis, Jr.

Steve Enich, Charles Johnson, Milwaukee, WI, for Commercial Heat Treating.

Herb Engel Realty Co., pro se.

Raymond J. Pollen, Riordan, Crivello, Carlson, Mentkowski & Steeves, Milwaukee, WI, for Hartwig, Inc. d/b/a Hartwig Exhibitions.

Stuart B. Eiche, Schulz, Schapekahm & Eiche, Milwaukee, WI, for Helmut's Building Service.

John A. Fiorenza, John P. Hayes, Fiorenza & Hayes, Milwaukee, WI, for Williams Petroleum.

Michael P. Carlton, von Briesen & Purtell, Milwaukee, WI, for Dennis J. Cortte d/b/a Layton Motor Sales.

Michael W. Rohr, Krawczyk & Duginski, Milwaukee, WI, for Lincoln Sav. Bank and Pemper Engineering Co.

Tom Duggan, John T. Lynch, Duggan, Lynch & Fons, Greenfield, WI, for Vernin Tretow d/b/a Loomis Center Garage.

Richard Drexler, Lubricants, Inc., Milwaukee, WI, for Lubricants, Inc.

Thomas S. Sommers, Sommers & Sommers, Milwaukee, WI, for Richard W. Drexler.

David V. Meany, Michael, Best & Friedrich, Milwaukee, WI, for Service Painting Corp.

Richard E. Schmidt, Fellows, Piper & Schmidt, Milwaukee, WI, for Frank Povlick, Inc.

Michael P. Dunn, Davis & Kuelthau, Milwaukee, WI, for Supreme Casting, Inc.

Jeffrey P. Clark, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Milwaukee, WI, for Texaco.

Michael Pfau, Thomas Schrimpf, Hinshaw & Culbertson, Milwaukee, WI, for Ranger Ins. Co.

Richard M. Hagstrom, Zelle & Larson, Minneapolis, MN, Michael R. Wherry, Davis & Kuelthau, Milwaukee, WI, for Employers Ins. of Wausau.

Ralph A. Weber, Kravit, Gass & Weber, Milwaukee, WI, for The Travelers Companies, Inc. and The Home Ins. Co.

Lawrence K. Rynning, Williams & Montgomery, Ltd., Chicago, IL, for Home Ins. Co.

Paul J. Pytlik, Otjen, Van Ert, Stangle, Lieb & Weir, Milwaukee, WI, for Hartford Acc. & Indem.

Jeffrey Leavell, Capwell, Berthelsen, Nolden, Casanova, Pitts, Kallenbach, Ltd., Racine, WI, for Waukesha Rubber Co.

## DECISION AND ORDER

WARREN, Senior District Judge.

This lawsuit concerns the investigation and potential cleanup of a former landfill in Franklin, Wisconsin (the "Site"), which the United States Environmental Protection Agency ("EPA") has listed on the National Priorities List ("NPL") established under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.* Plaintiff, Acme Printing Ink Company ("Acme"), is one of a number of companies and persons who may have generated waste that has been disposed of at the Site.

Pursuant to CERCLA § 122(a) and (d)(3), 42 U.S.C. § 9622(a) and (d)(3), Acme entered into an Administrative Order by Consent (the "Consent Order") with the EPA and the Wisconsin Department of Natural Resources ("DNR"). Pursuant to the Consent Order, Acme agreed to conduct a Remedial Investigation ("RI") to determine to what extent any hazardous substances have been released at the Site and a Feasibility Study ("FS" and, together with the RI, a "RI/FS") to evaluate alternatives for any removal or cleanup that may be necessary.

Acme brought this action against Menard, Inc. ("Menard"), the current owner of the Site, and numerous other defendants whom Acme believes share responsibility for any hazardous conditions at the Site. Now before this Court is: (1) defendant Cambridge Chemical, Inc., *et al.*'s (the "Cambridge defendants") Motion to Dismiss; (2) Texaco's Motion for Partial Summary Judgment; (3) Wausau's Motion to Dismiss; (4) Reliance's Motion to Dismiss Counterclaims; (5) Acme's Motion to Strike Pleadings and for Default Judgment for Failure to Answer Interrogatories; and (6) Acme's Motion to Strike and Exclude the Prior Deposition Testimony of Edward Fadrowski.[1]

## I. CAMBRIDGE DEFENDANTS' MOTION TO DISMISS

### A. Background

#### 1. *Facts alleged in Acme's Complaint*

From approximately 1970 until 1983, Edward J. Fadrowski, owner of Ed's Trucking, owned the property on which the Site is located. During this period, hazardous waste and solid waste containing hazardous constituents, pollutants and contaminants were disposed of at the Site.

In 1983, Menard purchased the property on which the Site is located with knowledge that the property had previously been used for waste disposal. As part of the purchase contract, Menard agreed to allow Mr. Fadrowski to continue to use the Site for waste disposal. Beginning in 1983 and continuing for an undetermined period thereafter, Menard excavated areas of the Site in connection with the construction of a Menard Cashway Lumber Store on the property adjacent to the Site. During the excavation, Menard exposed hazardous waste which had been buried at the Site and generated additional hazardous waste by mixing and commingling hazardous and non-hazardous waste.

Menard's excavation of the Site caused the release of hazardous substances, pollutants or contaminants from the previously disposed hazardous and solid waste. Menard then illegally disposed of the additional quantities of hazardous waste and waste containing hazardous substances, pollutants or contaminants generated during the excavation of the Site. Menard reburied and/or abandoned the waste without a permit or license from the DNR or the EPA.

A sampling analysis by the DNR during Menard's excavation of the Site identified the presence and release of hazardous substances, pollutants and contaminants within the meaning of CERCLA §§ 101(14) and (33), 42 U.S.C. § 9601(14) and (33). The release of hazardous substances, pollutants and contaminants in the Site created an imminent and substantial threat to human health and/or the environment.

Based on the results of the EPA and DNR investigations, the Site was nominated for and placed on the NPL in May 1986, pursuant to CERCLA § 105, 42 U.S.C. § 9605. In placing the Site on the NPL, the EPA took into account such factors as the population at risk, the threatened release of hazardous substances, pollutants and contaminants at the Site, the possible contamination of drinking water supplies and the destruction of sensitive ecosystems.

In May 1987, EPA and DNR entered into the Consent Order with Acme. Pursuant to the Consent Order, Acme agreed to conduct: (1) a RI in accordance with the terms of the National Contingency Plan ("NCP"), to determine fully the nature and extent of the release or threatened release of hazardous substances, pollutants and contaminants from the Site; and (2) a FS in accordance with the NCP to identify and evaluate alternative forms of appropriate remedial action to prevent or mitigate the migration of the release or threatened release of hazardous substances, pollutants or contaminants at the Site. The estimated cost of the RI/FS plus other reimbursable Site costs incurred by EPA and DNR exceeds $600,000.00.

#### 2. *Acme's claims for relief*

In Acme's Complaint, plaintiff alleges ten (10) claims for relief. However, the

---

**1.** This Court will issue an order resolving the remaining motions as soon as possible.

Cambridge defendants have moved to dismiss only plaintiff's first two claims. Accordingly, the Court will set forth only Claims I and II of plaintiff's Complaint.

In Acme's first claim for relief, it asserts that pursuant to § 7002(a) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a), it is entitled to: (1) an order declaring the principal defendants liable for their past handling of hazardous waste and solid waste containing hazardous substances, pollutants or contaminants at the Site and (2) a judgment enjoining them to take such action as may be appropriate to rectify their past mishandling, transportation or disposal of waste at the Site and/or such violations of RCRA, Subchapter III, as were admitted by them. Acme notes that the transportation and disposal of hazardous waste without a permit constitutes a violation of RCRA, Subchapter III, as well as the provisions of the Wisconsin Hazardous Waste Management Plan approved pursuant to RCRA. In addition, plaintiff states that pursuant to 42 U.S.C. § 6972(a)(1)(A) and 42 U.S.C. § 6928(a) and (g), Ed's Trucking, Mr. Fadrowski, Marcia Smith, Anthony Ivancich, Menard and such other of the principal defendants that contracted for or actively transported or disposed of hazardous waste without a permit are liable for civil penalties. These penalties may be up to $25,000 for each violation of RCRA, Subchapter III, committed by them for each day that each violation has continued.

In its second claim for relief, Acme seeks a declaration of liability for response costs under CERCLA. Pursuant to this claim for relief, Acme asserts that: (1) due to the past releases and threatened further releases of hazardous substances, pollutants or contaminants on and from the waste disposed of at the Site, the Site poses an imminent and substantial danger to public health and welfare; (2) the Site constitutes a facility within the meaning of CERCLA § 101(9), 42 U.S.C. § 9601(9); (3) the waste disposed of, found and released at the Site was hazardous and contained hazardous substances, pollutants or contaminants within the meaning of CERCLA §§ 101(14) and (33), 42 U.S.C. §§ 9601(14) and (33); (4)

there have been releases and there continue to be threatened releases of hazardous substances at the Site within the meaning of CERCLA § 101(22), 42 U.S.C. § 9601(22); (5) each of the principal defendants is a responsible party under CERCLA § 107(a)(1)–(4), 42 U.S.C. § 9607(a)(1)–(4). Acme states that each of the principal defendants is, alternatively, an owner of the Site, an operator of the Site, a person who entered into a contractual relationship or arrangement for the transportation or disposal of waste at the Site or a person who accepted waste for transport to the Site, whose acts have resulted in the release of hazardous substances, pollutants or contaminants from the Site. Acme further asserts that after the discovery of the releases of hazardous substances, pollutants or contaminants, it has initiated response actions to assess, address and identify an appropriate remedial action to the imminent and substantial hazard to human health and the environment. Acme states that its response actions are consistent with the NCP and are being taken at considerable cost to Acme.

Acme asserts that it is entitled to three forms of relief under CERCLA. First, pursuant to CERCLA §§ 107 and 113, 42 U.S.C. §§ 9607 and 9613, Acme asserts that it is entitled to judgment against the principal defendants for contribution for their pro-rata share of the amount of actual response costs incurred by it consistent with the terms of the NCP. Second, pursuant to CERCLA §§ 107 and 310, 42 U.S.C. §§ 9607 and 9659, Acme asserts that it is entitled to a judgment declaring that the principal defendants are jointly and separately liable for any further response actions necessary to respond to the releases and threatened releases of hazardous substances at the Site in a manner consistent with the terms of the NCP. Third, pursuant to 42 U.S.C. § 9659, Acme asserts that it is entitled to a judgment enjoining the principal defendants to participate in undertaking appropriate responses pursuant to the NCP.

### 3. *Procedural background*

On August 21, 1989, defendant Cambridge Chemical, Inc. submitted its Motion

to Dismiss. In its motion to dismiss, Cambridge argues that Acme's Claim I, brought pursuant to RCRA, and Claim II, brought pursuant to CERCLA, should be dismissed.

The following defendants have joined in the motion filed by Cambridge: (1) Service Painting Corp.; (2) Williams Petroleum, Inc.; (3) Miller Tilt–Top Trailer, Inc. and Lewis Miller; (4) Texaco, Inc.; (5) Richard Drexler; (6) Pemper Engineering Co., Inc.; (7) Lincoln Savings Bank, S.A.; (8) Menard, Inc.; (9) Cardinal Fabricating Corp.; (10) Robert Howell; (11) Robert Bera; (12) Sun Control Corp.; (13) Chromium, Inc.; (14) Kramer Brass Foundry, Inc.; (15) Commercial Heat Treating, Inc.; (16) Supreme Casting, Inc.; and (17) Frank Povlick, Inc.

In addition, Service Painting Corp., Williams Petroleum, Inc., Miller Tilt–Top Trailer, Inc. and Lewis Miller filed a separate Motion to Dismiss. In this motion, these defendants joined in Cambridge's arguments as well as alternative grounds for dismissing. This Court will address these defendants' additional arguments for dismissal as well as the Cambridge defendants' arguments below.

### B. Discussion

#### 1. *Claim I*

Acme's first claim against defendants is brought under RCRA's citizen suit provision, § 6972(a) which provides in part:

(a) **In general.** Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—

(1)(A) against any person ... who is alleged to be in violation of any permit, standard, regulation, condition, requirement or order which has become effective pursuant to this Act; or

(B) against any person ... including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an immi-

nent and substantial endangerment to health or the environment.

Plaintiff's Complaint appears to have been brought pursuant to both § 6972(a)(1)(A) and § 6972(a)(1)(B). *See* Complaint at ¶¶ 73, 75.

In their motion to dismiss, the Cambridge defendants assert that plaintiff's claim pursuant to § 6972(a) is barred because: (1) § 6972(b)(2)(B)(iv) bars citizen suits where a consent order has been obtained by the EPA and a party is conducting a RI/FS; (2) § 6972(b)(2)(C)(iii) bars citizen suits where the State has incurred costs to initiate a RI/FS and is diligently proceeding with a remedial action under that Act; and (3) RCRA citizen suits cannot be brought for allegedly past violations of RCRA. The Court shall address each of the Cambridge defendants' arguments below.

##### a. Section 6972(b)(2)(B)(iv)

The Cambridge defendants first argue that § 6972(b)(2)(B)(iv) prohibits Acme from commencing its RCRA citizen suit because of the Consent Order entered into between Acme, the EPA and the DNR. Section 6972(b)(2)(B)(iv) provides:

**(b) Actions Prohibited**

(2)(B) *No action may be commenced under subsection (a)(1)(B) of this section if the Administrator,* in order to restrain or abate acts or conditions which may have contributed or are contributing to their activities which may present the alleged endangerment—

\* \* \* \* \* \*

(iv) *has obtained a court order (including a consent decree) or issued an administrative order under section 106 of* the Comprehensive Environmental Response, Compensation and Liability Act of 1980, or section 703 of this Act [42 U.S.C. § 9606, 6973] *pursuant to which a responsible party is diligently conducting a removal action, Remedial Investigation and Feasibility Study (RI/FS), or proceeding with a remedial action.*

In the case of an administrative order referred to in clause (iv), actions under

subsection (a)(1)(B) are prohibited only as to the scope and duration of the administrative order referred to in clause (iv). (Emphasis added). As Acme correctly notes, § 6972(b)(2)(B)(iv) provides a bar to citizen suits pursuant to § 6972(a)(1)(B) only, not those under § 6972(a)(1)(A). Accordingly, the Cambridge defendants' arguments under § 6972(b)(2)(B)(iv) do not affect Acme's claims under § 6972(a)(1)(A).

Acme also argues that § 6972(b)(2)(B)(iv) does not apply to its § 6972(a)(1)(B) claim. In support of this argument, Acme states: (1) the Consent Order is not an order under CERCLA § 106, or RCRA § 7003 but a settlement pursuant to CERCLA § 122; (2) the Consent Order specifically allows Acme to bring claims against the defendants in question; (3) § 6972(b)(2)(B)(iv) only applies as to the scope and duration of the Consent Order and it does not reach areas beyond the initial RI/FS.

### i. Consent Order under CERCLA § 122, not CERCLA § 106 or RCRA § 7003

■ As Acme notes, § 6972(b)(2)(B)(iv)'s restriction on citizen suits only applies where the EPA Administrator has (1) obtained a court order (including a consent decree) or (2) issued an administrative order under CERCLA § 106 or RCRA § 7003. In this case, the EPA administrator has not obtained a court order. In addition, the administrative consent order falls within CERCLA § 122, not CERCLA § 106 or RCRA § 7003.

CERCLA § 106 provides that "when the President determines that there may be an imminent and substantial endangerment to the public health or environment because of an actual or threatened release of a hazardous substance waste facility," he may issue "such orders as may be necessary to protect public health and welfare and the environment." RCRA § 7003 similarly provides that the EPA, when faced with "an imminent and substantial endangerment to health or the environment ...

may bring suit on behalf of the United States ... against any person ... who has contributed or is contributing to such handling, storage, treatment, transportation or disposal to restrain such person from such handling, storage, treatment, transportation, or disposal, to order such person to take such other action as may be necessary, or both." CERCLA § 106 and RCRA § 7003 describe emergency executive orders which the president may issue in response to situations which cause imminent and substantive endangerment to health or the environment. Congress presumedly wished to prevent citizen suits in cases where the EPA had already taken emergency action for two reasons: (1) there is no need for citizens to act as private attorneys general when the EPA has taken action and (2) court intervention would slow the immediate action necessary.

In contrast to the types of court and administrative orders to which § 6972(b)(2)(B)(iv) refers, the Consent Order between the EPA, DNR and Acme was executed under the authority of CERCLA §§ 122(a) and (d)(3), 42 U.S.C. §§ 9622(a) and (d)(3). Section 122(a) authorizes the President to "enter into an agreement with any person (including the owner or operator of a facility from which a release or substantial threat of release emanates, or any other potential responsible person), to perform any response action ... if the President determines that such action will be done properly by such person." Section 122 governs settlement between the EPA and potentially responsible parties.

In contrast to cases involving CERCLA § 106 and RCRA § 7003 orders, there is no need to prevent citizen suits after CERCLA § 122 settlements. In fact, permitting such suits to go forward advances § 122's policy favoring settlement by allowing those who enter into consent orders to recover their costs.[2]

In conclusion, because the Consent Order between the EPA, the DNR and Acme was

---

**2.** RCRA and CERCLA, generally, also contain a policy in favor of settlement. Settlements are favored because they: (1) protect Superfund's financial resources from depletion, *see United*

*States v. Newcastle County,* 642 F.Supp. 1258, 1269 (D.Del.1986); and (2) reduce the government's litigation and enforcement cost. *See id.*

executed pursuant to § 9622 and not CERCLA § 106 or RCRA § 7003, this Court finds that § 6972(b)(2)(B)(iv) does not prohibit Acme's citizen suit.

ii. *Consent Order permitting suit and not reaching beyond initial RI/FS*

Because this Court has concluded that § 6972(b)(2)(B)(iv) does not bar Acme's suit since the Consent Order is not a CERCLA § 106 or RCRA § 7003 order, the Court need not address Acme's remaining arguments.

b. Section 6972(b)(2)(B)(iii)

■ The Cambridge defendants next argue that Acme's citizen suit is barred by § 6972(b)(2)(B)(iii), which provides that no action may be commenced under subsection (a)(1)(B) of this section if the EPA:

has incurred costs to initiate a Remedial Investigation and Feasibility Study under section 104 of the Comprehensive Environmental Response Compensation and Liability Act of 1980 [42 USCS § 9604] and is diligently proceeding with a remedial action under that Act;

Thus, § 6972(b)(2)(B)(iii) bars citizen suits brought under § 6972(a)(1)(B) if two conditions are met: ·(1) the EPA has incurred costs to initiate a remedial investigation and feasibility study and (2) the EPA is diligently proceeding with a remedial action.

With regard to the first condition, the Cambridge defendants note that the Consent Order provided that Acme was to conduct a RI/FS under the supervision of the EPA and DNR. *See* Consent Order. In addition, the defendants note that Acme's Complaint provides that "the estimated costs of the RI/FS plus reimbursement oversight cost incurred by the USEPA and WDNR exceeds $600,000.00." *See* Complaint at ¶ 57. In addition, the Cambridge

defendants assert that the Consent Order contains provisions putting the EPA at the helm of the RI/FS process and explicitly acknowledges that the EPA will incur costs. For example, the Cambridge defendants cite the costs being incurred for EPA project coordinator.

In response, Acme argues that the Cambridge defendants' argument fails under the plain meaning of § 6972(b)(2)(B)(iii). First, Acme asserts that the EPA and DNR have not incurred costs to initiate a RI/FS under § 104 of CERCLA and that the Complaint unambiguously alleges that plaintiff is the party performing the RI/FS. Acme notes that under the Consent Order, it is obligated to conduct the RI/FS and to reimburse the EPA and DNR for oversight costs. *See* Consent Order, § IX Work to be Performed; § X Plans and Reports; § XXV Reimbursement of Costs. Second, Acme asserts that the EPA and DNR are not proceeding with any remedial action under CERCLA because the EPA's and DNR's involvement in the RI/FS amounts to a removal and not a remedial action.

i. *Costs*

This Court finds Acme's first argument, that the EPA and DNR have not incurred costs, lacks merit. It is clear from both the Consent Order and the Complaint that the EPA and DNR have incurred costs of over $600,000. It appears that Acme must reimburse the EPA and DNR for these costs. Nonetheless, the EPA "has incurred costs to initiate a Remedial Investigation and Feasibility Study."

ii. *Remedial action*

The term "removal" relates to cleanup actions taken on a temporary or emergency basis. *See* 42 U.S.C. § 9601(23).[3] In contrast, the term "remedial action" refers to permanent solutions and alternative treat-

---

**3.** CERCLA § 101(23), 42 U.S.C. § 9601(23), defines the term "removal":

(23) The terms "remove" or "removal" means that cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removal

material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. The term includes, in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for, action taken under section 104(b)

ments. *See* 42 U.S.C. § 9601(24).[4] Some courts have indicated that RI/FS's fall within § 9601(23) removal actions. *See Wickland Oil Terminals v. Asarco, Inc.,* 792 F.2d 887, 892 (9th Cir.1986); *Tanglewood East Homeowners v. Charles–Thomas, Inc.,* 849 F.2d 1568, 1575 (5th Cir.1988) (" 'remove' or 'removal' includes 'such actions as may be necessary to monitor, access, and evaluate the release or threat of release of hazardous substances ...' § 9601(23). Investigatory costs fall within the ambit of this provision"). However, the RI/FS in this case and RI/FS's in general appear to relate to permanent as well as temporary cleanup actions. *See* Consent Order, § IV Statement Purpose, ¶ A.[5] Accordingly, this Court finds that the RI/FS in this action constitutes remedial as well as removal activity.

Nonetheless, this Court finds that, even though the RI/FS may fall within CERCLA's definition of "remedial actions," it does not meet the second requirement of

§ 6972(b)(2)(B)(iii). The parties point to no language in RCRA or CERCLA which indicates that Congress intended to allow a party to bootstrap the EPA's actions so that the initiation of a RI/FS could meet both the requirement that the EPA has incurred costs to initiate such an investigation and study and that it is diligently proceeding with a remedial action. In order to give meaning to both requirements, this Court must interpret § 9672(b)(2)(B)(iii) to require both that the EPA has initiated a RI/FS and is diligently proceeding with some remedial action beyond the remedial investigation and feasibility study. Because the Cambridge defendants point to no remedial action by the EPA beyond its involvement with the RI/FS, this Court finds that their argument for dismissal based on § 6972(b)(2)(B)(iii) lacks merit.

### c. Plaintiff is not an appropriate private attorney general

The Cambridge defendants next argue that Acme cannot properly act as a private

---

of this Act [42 U.S.C.S. § 9604(b) ], and any emergency assistance which may be provided under the Disaster Relief Act of 1974 [42 U.S.C.S. § 5121 *et seq.*].

**4.** CERCLA § 101(24) provides:
The terms "remedy" or "remedial action" mean [means] those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances and associated contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate and runoff, onsite treatment or incineration, provision of alternative water supplies, and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment. The term includes the costs of permanent relocation of residents and businesses and community facilities where the President determines that, alone or in combination with other measures, such relocation is more cost-effective than and envi-

ronmentally preferable to the transportation, storage, treatment, destruction, or secure disposition offsite of hazardous substances, or may otherwise be necessary to protect the public health or welfare; the term includes offsite transport and offsite storage, treatment destruction, or secure disposition of hazardous substances and associated contaminated materials.

**5.** Paragraph A provides:
In entering into this Consent Order, the mutual objectives of the U.S. EPA, the WDNR and [Acme] are for [Acme]: (1) to conduct a remedial investigation (RI) to determine fully the nature and extent of the release or threatened release of hazardous substances, pollutants, or contaminates from the Fadrowski Drum Disposal Site; and (2) to perform a feasibility study (FS) to identify and evaluate alternatives for the appropriate extent of remedial action to prevent or mitigate the migration or the release or threatened release of hazardous substances, pollutants, or contaminants from the Fadrowski Drum Disposal Site. In executing this Consent Order, Respondent does not make any commitment, express or implied, to perform any remedial work at the Fadrowski Drum Disposal Site other than the Remedial Investigation and Feasibility Study.
The Consent Order's first objective appears to fall within the ambit of § 9601(23). However, the Consent Order's second objective appears to fall within the scope of § 9601(24). Accordingly, the RI/FS appears to fall within both § 9601(23) and § 9601(24).

attorney general under § 6972(a). In support of this argument, the Cambridge defendants state: (1) a private attorney general under the citizen suit provision must be a third-party suing for the benefit of others, not for his own private benefit; (2) citizens' suits are reserved solely for those situations where citizens are needed to act as private attorneys general to fill a void because the government has not commenced an action against polluters; and (3) Acme could bring an action for contribution under state law or 42 U.S.C. § 9613.

#### i. *Private benefit*

■ The Cambridge defendants first argue that plaintiff should not be able to bring a citizen's suit because it is suing for its own benefit, rather than for the benefit of another. However, this Court is aware of no policy or language within § 6972 which prevents a party from seeking remedies which are to its benefit as well as the benefit of others.

#### ii. *Lack of void*

■ The Cambridge defendants next argue that citizens' suits are reserved solely for those instances where citizens need to act as private attorneys general to fill a void where the government has not commenced an action against polluters. *See Hudson River Fishermen's Association v. Westchester Cty.*, 686 F.Supp. 1044, 1052 (S.D.N.Y.1988). In *Hudson River*, the court permitted plaintiff to proceed with a Clean Water Act citizen's suit but only because the government's enforcement action did not address the factual grievances asserted by plaintiff. *See id.* The *Hudson River* holding has relevance to this action because it was brought under citizen's suit provision of the Clean Water Act, which parallels § 6972. *See* 33 U.S.C. § 1365(b)(1)(B); 42 U.S.C. § 6972(b)(1)(B). In relevant part, 33 U.S.C. § 1365(b)(1)(B) provides:

No action may be commenced—
(1) Under subsection (a)(1) of this section—
\* \* \* \* \* \*
(B) If the Administrator or State has commenced and is diligently prosecuting an civil or criminal action in a court of the United States or a State to require compliance with the standard, limitation, or order, but in any such actions in a court of the United States any citizen may intervene as a matter of right.

Similarly, 42 U.S.C. § 6972(b)(1)(B) provides:

No action may be commenced under § (a)(1)(A) of this section—
\* \* \* \* \* \*
(b) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State to require compliance with such permit, standard, regulation, condition, requirement, prohibition, or order.

However, in this case, neither the EPA nor the DNR has instituted a civil or criminal action against Acme or the Cambridge defendants. Accordingly, the holding in *Hudson River* does not bar Acme's citizen suit.

#### iii. *Contribution action available*

■ Finally, the Cambridge defendants argue that Acme should be prevented from pursuing their citizen's suit because they can bring an action for contribution under state law or 42 U.S.C. § 9613. *See* 42 U.S.C. § 9613(f). However, the Cambridge defendants present no case law supporting this assertion. Moreover, that CERCLA and RCRA provide private parties more than one avenue of relief is hardly surprising. Accordingly, this Court finds that the Cambridge defendants' final argument lacks merit.

#### d. Wholly past violations

■ The Cambridge defendants next argue that Acme's RCRA citizen suit claim must be dismissed because it is based upon alleged wholly past violations of RCRA. In support of this argument, the Cambridge defendants cite *Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc. and National Resource Defense Counsel*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). In *Gwaltney*, the Supreme Court held that citizens' suits could not be main-

tained under the Clean Water Act for alleged wholly past violations of the Act. In construing the citizen's suit provision in the Clean Water Act, 33 U.S.C. § 1251, *et seq.*, the *Gwaltney* court concluded:

> The most natural reading of "to be in violation" is a requirement that citizen/plaintiff alleged a state of either continuous or intermittent violation— that is, a reasonable likelihood that a past polluter will continue to pollute in the future. Congress could have phrased its requirement in language that looked to the past ("to have violated"), but it did not choose this readily available option.

*Id.* at 57, 108 S.Ct. at 380. In support of this conclusion, the Supreme Court noted that: (1) Congress used identical language in the citizen's suit provision of several other environmental statutes that authorized only prospective relief, *see id.;* (2) the pervasive use of the present tense throughout the Clean Water Act's citizen suit provision indicates the prospective orientation of the provision, *see id.* at 58–59, 108 S.Ct. at 381–82; and (3) the legislative history of the Act indicates that citizen suits were intended to abate pollution and to enjoin continuous or intermittent violations, not to remedy wholly past violations. *See id.* at 61–63, 108 S.Ct. at 383–84.

As the Cambridge defendants note, several courts have extended the *Gwaltney* holding[6] to RCRA's analogous citizen's suit provision, § 6972(a)(1)(A). *See, e.g., Lutz v. Chromatex*, 718 F.Supp. 413, 424 (M.D.Pa.1989). The *Lutz* Court states:

> Defendants contend that wholly past violations of RCRA cannot be the subject of

a citizen suit under section 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A). This argument is even stronger with respect to RCRA than with CERCLA. In *Gwaltney*, the Supreme Court specifically mentioned RCRA as an environmental statute that authorizes only prospective relief. *See Gwaltney* [484 U.S. at 57 n. 2], 108 S.Ct. at 381 n. 2. In addition, every court that has analyzed section 7002 in the wake of *Gwaltney* has concluded that an allegation of either a continuous or intermittent violation is required. *See Ascon Properties, Inc. v. Mobil Oil Co., supra* [866 F.2d 1149] [ (9th Cir.1989) ]; *Coburn v. Sun Chemical Corp., supra* [1988 WL 120739] ("The *Gwaltney* Court's interpretation of the phrase 'to be in violation' contained in the citizen suit provision of the Clean Water Act applies with equal fervor to the very identical phrase contained in the citizen suit provision of RCRA.... Thus, we find that Section 7002(a)(1)(A) of RCRA bars any suit based on 'wholly past' violations of RCRA"); *McClellan Ecological Seepage Situation v. Weinberger*, 707 F.Supp. 1182, 1187 (E.D.Cal.1988) ("The citizen suit provisions of RCRA and the Clean Water Act are forward-looking; they are intended to remedy present and future harmful impacts, not conduct that has occurred entirely in the past and cannot reasonably be expected to result in future harm").

*Id.* at 424.

This Court concurs with the holding in *Lutz* that § 6972(a)(1)(A) requires an alle-

---

**6.** In analyzing the decisions in *Gwaltney* and *Lutz, infra*, this Court first notes that neither decision states that the bar for "wholly past violations" applies to suits brought pursuant to § 6972(a)(1)(B). Rather, § 6972(a)(1)(B) "explicitly targets wholly past violations." *Gwaltney*, 484 U.S. at 57, 108 S.Ct. at 380. (*Tanglewood* at 1575–76 also states that § 6972(a)(1)(B) provides for a claim for injunctive relief on either past or present conduct.) The *Gwaltney* Court noted:

> [T]he Solid Waste Disposal Act as amended in 1984 to authorize citizen suits against any "past or present" generator, transporter, owner, or operator of a treatment, storage, or

disposal facility "who has contributed or who is contributing" to the "past or present" handling, storage, treatment, transportation, or disposal of certain hazardous waste. 42 U.S.C. § 6972(a)(1)(B) (1982 E.D., USPP. III). Prior to 1984, the Solid Waste Disposal Act contained language identical to that of § 501(a) of the Clean Water Act, authorizing citizens' suits against any person "alleged to be in violation" of waste disposal permits or standards. 42 U.S.C. § 6972(a)(1).

*Id.*, 484 U.S. at 57, 108 S.Ct. at 381; *see also Lutz.*

Accordingly, any limitation on Acme's Claim I due to the prior nature of the Cambridge defendants' violations applies only to § 6972(a)(1)(A).

gation of either a continuous or intermittent violation. Section 6972(a)(1)(A) contains the same "to be in violation" language as 33 U.S.C. § 1365(a)(1)(A). In addition, Acme points to no legislative history or other evidence showing that Congress did not wish to limit the reach of § 6972(a)(1)(A) to continuous or intermittent violations.

■ While this Court finds that the reach of § 6972(a)(1)(A) is confined to allegations of continuous or intermittent violations, this Court also finds that Acme alleges "a state of either continuous or intermittent violation[s]—that is, a reasonable likelihood that past polluter[s] will continue to pollute in the future." Acme's Complaint states:

> Each of the principal defendants identified in ¶¶ 7–43 is, alternatively, a person, generator, transporter, owner or operator, who by contract, arrangement or conduct has contributed to the handling, transportation or *disposal* of solid or hazardous waste, which has created and presents an imminent or substantial endangerment to the public health or the environment.

Complaint at ¶ 72 (emphasis added). RCRA includes in its broad definition of "disposal" the continuous leaking of hazardous substances. *See* 42 U.S.C. § 6903(3); *see also Jones v. Inmont Corp.*, 584 F.Supp. 1425, 1436 (S.D.Ohio 1984) (continual leaking from a site is "disposal" and joinable under § 6973); *see also United States v. Waste Industries, Inc.*, 734 F.2d 159, 164 (4th Cir.1984). Accordingly, leaking of hazardous substances may constitute a continuous or intermittent violation of RCRA. Because plaintiff alleges present conduct on the part of the Cambridge defendants, this Court cannot properly dismiss plaintiff's § 6972(a)(1)(A) claim on the ground that it is based on wholly past violations.

### e. Cambridge defendants did not control disposal

■ The Cambridge defendants next argue that this Court should dismiss Acme's claim under § 6972(a)(1)(B) because they have not "contributed to" the imminent and substantial endangerment at the Site. In support of this argument, the Cambridge defendants cite *United States v. Aceto Agricultural Chemicals Corp.*, 699 F.Supp. 1384 (S.D.Ia., W.D.1988). In *Aceto*, the district court dismissed a RCRA § 7003 action brought by the government on the grounds that there were insufficient facts alleged in the government's complaint to establish that the defendant's actions "contributed" to the imminent and substantial endangerment condition at the site. The district court adopted a narrow interpretation of the phrase "contributing to" and required specific allegations in the complaint to demonstrate how defendants had the authority to control the manner in which hazardous substances or waste were disposed of at the site. *See id.* at 1391–92. The court was concerned with the possibility of "a very slippery slope" if all prior owners of hazardous waste were held accountable for their disposal. *See id.* at 1392.

The Eighth Circuit reversed the district court's holding with respect to the meaning of "contributed to." *See United States v. Aceto Agr. Chemical Corp.*, 872 F.2d 1373, 1383–84 (8th Cir.1989). The circuit court disagreed with the district court's conclusion that RCRA should be narrowly construed. *See id.* at 1383. The circuit court noted that "[t]he relevant legislative history supports a broad, rather than a narrow construction of the phrase 'contributed to.'" *See id.* (Citing H.R.Rep. No. 31, 96th Cong., 1st Sess. 31 (1979) (the Eckhardt Report); S.Rep. No. 172, 96th Cong., 2nd Sess. 5, *reprinted in* 1980 U.S.Code Cong. & Admin.News 5019, 5023.; *United States v. Waste Industries, Inc.*, 734 F.2d 159, 166 (4th Cir.1984)). More importantly, the Eighth Circuit noted that "like CERCLA, RCRA is a remedial statute which should be liberally construed." *See Aceto* at 1373 (citing *United States v. Price*, 688 F.2d 204, 211, 213–14 (3d Cir.1982)). The circuit court went on to state that an explicit allegation of control is not necessary and that a plaintiff's complaint is sufficient if it alleges that a defendant had "the

authority to control ... waste disposal." *See id.*

This Count concurs with the Eighth Circuit's finding with respect to Congress' intent. In addition, this Court finds that Acme's Complaint need not explicitly allege control on the part of the Cambridge defendants. Rather, Acme's Complaint states a cause of action under § 6972(a)(1)(A) if it alleges that the Cambridge defendants had authority to control the disposal of the hazardous waste.

■ Acme's Complaint alleges that the Cambridge defendants "contracted for or otherwise arranged for the transportation and disposal of the waste [they] generated." *See* Complaint at ¶¶ 62–67, 69. Accordingly, the Complaint adequately pleads that the Cambridge defendants contributed to the imminent and substantial endangerment at the site.

### g. Failure to serve United States Attorney General

The Cambridge defendants next argue that this Court should dismiss Acme's claim under § 6972(a)(1)(B) because Acme failed to serve a copy of the Complaint on the United States Attorney General. *See* § 6972(b)(2)(F).[7] The Cambridge defendants note that while Acme's Complaint states that it gave notice of its intent to file this action by serving a "Notice of Intent" on the EPA, *see* Complaint at ¶ 59, the Complaint does not contain any allegation that it notified the Attorney General of this action. The defendants argue that this Court should find the failure of the Complaint to contain any allegation of notice or service of the Complaint on the Attorney General to be fatal to Acme's § 6972(a)(1)(B) action. In support of this argument, the Cambridge defendants cite *Ascon Properties, Inc. v. Mobil Oil Corp.,* 866 F.2d 1149, 1159 (9th Cir.1989).

■ The Court's Docket Sheet makes clear that Acme served both the United States Attorney General and the Administrator of the EPA. *See* Docket Sheet, Entry No. 161A. Since § 6972(b)(2)(F) merely requires that a plaintiff serve a copy of the complaint on the Attorney General and the Administrator and does not require that the plaintiff record that service in his complaint, this Court finds that Acme has met the requirements of subsection (b)(2)(F).

### 2. *Claim II*

Acme's second claim of relief is for recovery and declaration of liability for response costs under CERCLA §§ 107, 113, and 310. *See* Complaint at ¶¶ 82–86; 42 U.S.C. §§ 9607, 9613 and 9659. Acme seeks recovery of the costs it has incurred in performing the RI/FS from defendants under the liability provision of § 107(a)(1)–(4)(B). *See* Complaint at ¶¶ 82, 84; 42 U.S.C. § 9607(a)(1)–(4)(B). Incident to its cost recovery claim under § 107, Acme also seeks a declaratory judgment finding the principal defendants liable for response costs or damages under § 113(g)(2), that would be binding in any attempt to recover such costs or damages in the future. *See* Complaint at ¶¶ 84–85;[8] 42 U.S.C. § 9613(g)(2). In addition, Acme asks the Court to allocate equitably, pursuant to

---

**7.** 42 U.S.C. § 6972(b)(2)(F) provides:
Whenever an action is brought under subsection (a)(1)(B) in a court of the United States, the plaintiff shall serve a copy of the Complaint on the Attorney General of the United States and with the Administrator.

**8.** Paragraph 84 of the Complaint states:
Pursuant to 42 U.S.C. §§ 9607 and 9613, Acme is entitled to judgment against the principal defendants for contributions for their pro-rata share of the amount of actual response costs incurred by Acme consistent with the terms of the NCP.
Paragraph 85 provides:
Pursuant to 42 U.S.C. §§ 9607 and 9659, Acme is also entitled to a judgment declaring the

principal defendants to be jointly and severally liable for any further response actions that are necessary to respond to the releases and threatened releases of hazardous substances and constituents at the Site in a manner consistent with the terms of the NCP.
Neither paragraph 84 nor paragraph 85 clearly states that plaintiff wishes to pursue an action under Section 113(g)(2), 42 U.S.C. § 9613(g)(2). However, in order to expedite matters in this case, this Court will now *sua sponte* grant Acme leave to amend its Complaint to include a subclaim under Section 113(g)(2).

§ 113(f)(1), the response costs among those persons found liable under § 107(a). *See* Complaint at ¶ 84; 42 U.S.C. §§ 9607(a) and 9613(f)(1). Finally, Acme requests the Court for relief under § 310, enjoining the principal defendants to participate in undertaking the appropriate responses or remedial actions according to the NCP. *See* Complaint at ¶ 86; 42 U.S.C. § 9659.

The Cambridge defendants argue that this Court should dismiss each of the subclaims contained in Claim II.

 a. Subclaim 1: § 107(a)(1)–(4)(B)

Pursuant to CERCLA § 107(a)(1)–(4)(B), Acme seeks recovery of costs it has incurred in performing the RI/FS from the principal defendants. Section 107(a)(1)–(4)(B) provides:

(a) Covered person; scope; recoverable costs and damages; interest rate; "comparable maturity" date. Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence

of response costs, of a hazardous substance, shall be liable for—

 * * * * * *

(B) any other necessary costs or response incurred by any other person consistent with the national contingency plan

. . . .

 ■ In order to bring an action under § 107(a)(1)–(4)(B), a plaintiff must allege: (1) that the site in question is a "facility" as defined in CERCLA § 101(9), 42 U.S.C. § 9601(9); (2) that the defendant is a responsible person under § 107(a); (3) that a release or threatened release of a hazardous substance has occurred; and (4) that the release or threatened release has caused the plaintiff to incur response costs. *See, e.g., Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664 (5th Cir.1989); *Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1152–53 (9th Cir.1989). In this case, Acme has met each of the four requirements.

First, Acme alleges that the Site constitutes a facility within the meaning of § 101(9). *See* Complaint at ¶ 79. Second, plaintiff alleges that each of the principal defendants is a responsible person under § 107(a). In paragraphs 60–62, 64–67, 72 and 82, Acme alleges that various generator defendants, including the Cambridge defendants, arranged for disposal of hazardous substances that were disposed of at the Site. *See* 42 U.S.C. § 9607(a)(3). In paragraphs 60, 69 and 82, Acme alleges that several transporters, including members of the Cambridge defendants, transported and disposed of hazardous waste at the Site. *See* 42 U.S.C. § 9607(a)(4). In paragraphs 6, 7, 9, 50, 51, 70 and 82, plaintiff alleges that present and past owners and operators of the facility, including members of the Cambridge defendants, are liable parties. *See* 42 U.S.C. § 9607(a)(1) and (2). Third, in paragraphs 6, 52, 53, 54, 80 and 81, Acme alleges the "release" or "threatened release" of "hazardous substances" has occurred at the Site. Fourth, in paragraphs 57 and 83, Acme alleges that it has incurred "response costs."

In spite of Acme's allegations, the Cambridge defendants argue that Acme's

§ 107(a) claim should be dismissed because "it has not incurred or agreed to incur remedial costs." The Cambridge defendants note that Acme's Complaint alleges that it only has incurred "response costs" for "properly assessing, addressing and identifying an appropriate remedy." *See* Complaint at ¶ 83. The Cambridge defendants further note that there are no allegations that Acme has incurred or has agreed to incur costs associated with actually cleaning up the Site. In fact, the Cambridge defendants note, the Consent Order states that Acme makes no commitment to perform remedial work at the Site other than the preparation of the RI/FS. *See* Consent Order at § IV, ¶ A.[9]

The Cambridge defendants argue that Congress intended to authorize private parties to bring suits under § 107(a)(1)–(4) only if they incurred costs associated with remedial action as well as removal costs. In support of this argument, the Cambridge defendants note the differing language in § 107(a)(4)(A) and § 107(a)(4)(B). Section 107(a)(1)–(4)(A) governs suits by the government and states that the government can recover "all costs of removal *or* remedial action." *See* 42 U.S.C. § 9607(a)(1)–(4)(A) (emphasis supplied by Cambridge defendants). Section 107(a)(1)–(4)(B) governs suits by private persons and states that such parties can recover any "... necessary costs of response incurred by [them] consistent with the national contingency plan." *See* 42 U.S.C. § 9607(a)(1)–(4)(B). The Cambridge defendants argue that, while the government can recover costs of either remedial or removal actions, a private party must incur both removal *and* remedial costs in order to obtain reimbursement under § 107(a).

In support of this argument, the Cambridge defendants cite the definition of the term "response:"

The terms "respond" or "response" means [mean] remove, removal, remedy, *and* remedial action, and all such terms (including the terms "removal" and "remedial action") includes enforcement activities related thereto.

42 U.S.C. § 9601(25) (emphasis supplied by Cambridge defendants). Based on the above definition, the Cambridge defendants argue that Congress did not define the term "response" in the alternative and intended it to encompass the terms "remove," "removal," "remedy," *and* "remedial action." The Cambridge defendants then state that Acme's RI/FS does not fall within the meaning of the terms of "remedy" and "remedial action."

This Court concedes that neither CERCLA § 101(25) nor § 107(a)(1)–(4)(B) is a model of legislative clarity. Section 101(25) could have been written more clearly to state that the term response relates to either a removal or a remedial action. In addition, Congress could have clarified § 107(a)(1)–(4)(A)–(B) by using the same language to describe the costs recoverable by the government and private parties.

 However, given the remedial nature of CERCLA, it is clear that Congress intended a private party to recover under § 107(a) for either removal or remedial costs.[10] Moreover, the RI/FS in this case is both a removal and a remedial action, as discussed above. Accordingly, even under the Cambridge defendants' construction of § 107(a)(1)–(4)(B) and § 101(25), Acme may seek relief under § 107(a).

b. Subclaim 2: § 113(f)(1) and § 113(g)(2)

Pursuant to § 113, Acme requests this Court: (1) to allocate equitably pursuant to § 113(f)(1) the response costs among those persons found liable under § 107(a); and (2) to enter a declaratory judgment, finding

---

**9.** Pursuant to the Consent Order, Acme is: "(1) to conduct a remedial investigation (RI) to determine fully the nature and extent of the release or threatened release of hazardous substances, pollutants or contaminates from the Fadrowski Drum Disposal Site; and (2) to perform a feasibility study (FS) to identify and evaluate alternative for the appropriate extent of remedial action." *See id.*

**10.** This Court notes that the Cambridge defendants point to no specific policy rationale which overrides CERCLA and RCRA's general policy favoring private recovery.

defendant liable for response costs or damages under § 113(g)(2), that would be binding in any attempt to recover such costs or damages in the future.

### i. *Section 113(f)(1)*

CERCLA § 113(f)(1) provides:

Contribution. Any person may seek contribution from any other person who is liable or potentially liable under Section 107(a), during or following any civil action under Section 106 or Section 107(a) ... In resulting contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.

42 U.S.C. § 9613(f)(1). The Cambridge defendants' sole argument against Acme's request for relief under CERCLA § 113(f)(1) is that Acme cannot maintain an action under CERCLA § 107(a). Because this Court has already determined that Acme may properly maintain an action under § 107(a), the Cambridge defendants' argument for dismissal of Acme's § 113(f)(1) claim must fail.

### ii. *Section 113(g)(2)*

 Acme seeks declaratory relief under CERCLA § 113(g)(2) which provides in part:

Actions for recovery of costs ... in any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages....

In spite of § 113(g)(2)'s clear language, the Cambridge defendants argue that Acme is not entitled to declaratory relief for two reasons: (1) there is no case or controversy under § 107(a); and (2) it is impossible to determine the extent of liability for any of the principal defendants because Acme has not yet agreed to incur cleanup costs at the Site.

As stated above, Acme states a claim under § 107(a). Accordingly, the Cambridge defendants' argument based on an absence of a case or controversy lacks merit.

In support of their second argument, that it is impossible to determine the extent of liability because Acme has not yet agreed to incur cleanup costs, the Cambridge defendants cite three cases: (1) *United States v. Dickerson*, 660 F.Supp. 227 (M.D.Ga.1987), *aff'd* 834 F.2d 974 (11th Cir.1987); (2) *Bulk Distribution Centers, Inc. v. Monsanto Co.*, 589 F.Supp. 1437, 1446 (S.D.Fla.1984); *and* (3) *United States v. Seymour Recycling Corp.*, 686 F.Supp. 696 (Ind.1988).

The defendants in *Dickerson*, as potentially responsible persons, sought a declaration of non-liability prior to any cost recovery action by the EPA. *See Dickerson* at 231. The *Dickerson* court held that "[b]ecause the relief the Dickersons seek depends to a great extent on factual issues not developed at the present, the court concludes that there is not an 'actual controversy' ready for decision." *See Dickerson* at 232.

This Court finds *Dickerson* inapplicable here for two reasons. First, unlike the Dickersons, Acme does not seek a declaration of non-liability prior to an action by the EPA. While the Dickersons had no statutory basis for seeking declaratory relief, Acme's request for such relief is properly brought under § 113(g)(2). Second, unlike *Dickerson*, Acme's § 107(a) claims should provide opportunities for discovery to determine whether the defendants in this case should be held liable under § 113. Accordingly, this case does not possess problems with factual development similar to those the *Dickerson* court faced.

In *Bulk Distribution*, the court held that the plaintiff could not maintain an action under § 107(a)(1)–(4)(B) because neither the state nor federal government had approved a cleanup proposal. *See Bulk Distribution* at 1446. *Bulk Distribution* was decided more than two years before the enactment of § 113(g)(2). Accordingly, this Court finds that *Bulk Distribution* is not applicable to this case.

In *Seymour Recycling*, the court denied defendant's motion for declaratory judgment that other defendants were liable to it

for contribution. *See Seymour Recycling* at 700. In reaching this conclusion, the *Seymour Recycling* court found that the defendant's motion was not ripe for adjudication. *See id.* The court held that because the generator defendants did not resolve their liability with the United States, their request for declaratory relief on their contribution claims was premature. *See id.* In reaching this conclusion, the *Seymour Recycling* court noted:

> Under Section 113(f) CERCLA, which governs claims for contribution, a person may *"seek* contributions from any other person who is liable or potentially liable ... during or following any civil action under" Section 106 or Section 107(a) of CERCLA. 42 U.S.C. § 9613(f)(1) (emphasis added). However, a person can *gain* contribution only after it "has resolved its liability with the United States or a State." *Id.* § 9613(f)(3)(B) ... Thus, until a party has settled with the United States or a State, its motion for declaratory relief on a contribution claim is premature.

*Id.* (emphasis in original).

The *Seymour Recycling* decision has been criticized because the CERCLA section upon which it relies, § 113(f)(3)(B), applies only to situations in which the responsible parties have reached "administrative or judicially approved settlement[s]." *See Rockwell International Corp. v. IU International Corp.,* 702 F.Supp. 1384, 1389 (N.D.Ill.1988). Because this Court concurs that *Seymour Recycling* improperly relied on § 113(f)(3)(B), this Court shall not adopt its rationale.[11] Instead, this Court adheres to the apparent majority rule that the absence of a government enforcement action against a party seeking a declaratory judgment does not bar a party from such declaratory relief. *See Rockwell* at 1389; *Wickland Oil,* 792 F.2d 887, 893 (9th Cir. 1986).

## II. TEXACO'S MOTION FOR PARTIAL SUMMARY JUDGMENT [12]

The majority of Texaco's motion for partial summary judgment deals with matters contained in the Cambridge defendants' motion to dismiss. Since this Court has resolved the matters contained in the Cambridge defendants' motion, this Court need not further address them.

Texaco's motion, however, also makes several factual allegations which this Court must address. In particular, Texaco alleges:

> [The EPA and DNR] have determined that Acme is a generator of waste that may have been disposed of at the Site. [The EPA] has notified several other parties of their potential responsibility for clean-up at that Site. [The EPA] has also directed information requests to other parties, including Texaco, that it does not consider to be potential responsible parties ... but who may have some information concerning the Site.
>
> Acme entered into an administrative order by consent with the [EPA and DNR] in which Acme agreed to conduct a remedial investigation and feasibility study ... under the supervision of the [EPA]. Acme is required under the order to commence work to clean-up the Site within ten (10) days after the [EPA] approves Acme's RI/FS Work Plan for the Site. The order also provides penalties if Acme does not comply with its provisions.

Texaco's Memorandum in Support of Its Motion for Partial Summary Judgment at 2–3.

As Acme notes in its responsive brief, several of Texaco's factual assertions are misleading. First, Texaco's statement that the EPA and DNR have determined that Acme is a generator of waste that may have been disposed of at the Site differs

---

**11.** Even if this Court adhered to the holding of *Seymour Recycling,* it would not find that Acme's claim for declaratory relief under § 113(g)(2) and 28 U.S.C. § 2201 is barred. Acme has already resolved its liability with the government with respect to the RI/FS. *See* Consent Order. Having resolved this liability in

accordance with the *Seymour Recycling* court's decision, Acme now seeks declaratory relief under § 113(g)(2) and 28 U.S.C. § 2201.

**12.** Supreme Casting joins Texaco's motion for partial summary judgment.

somewhat from findings the Consent Order. The Consent Order states:

> On the basis of information available to the U.S. EPA, Respondent, Acme Printing Ink Company *may* have generated hazardous substances which were disposed of at the Site, and, as such, is a responsible person pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607.

Consent Order, § 5, ¶ C (emphasis added). The Consent Order also states:

> Nothing in this Consent Order is intended by the parties to be an admission of law or fact by the Respondent.

*Id.* at § I, ¶ C.

Second, Texaco's statement that the EPA does not consider it to be a potentially responsible party is misleading since it infers that Texaco has been found to be a non-responsible party. Texaco has submitted no final agency decision or Record of Decision to support the inference that it has been found not to be responsible. Rather, Texaco merely submits a letter from the EPA to it requesting information regarding its dealings with the Site. *See* Bogart Aff., Ex. B. If anything, the EPA's letter indicates that the EPA considers Texaco to be a possible violator of CERCLA and RCRA. *See id.* at 1.

Finally, Texaco's assertion that the Consent Order requires Acme to commence cleanup on the Site within ten days after the EPA approves Acme's RI/FS Work Plan is incorrect. The Consent Order expressly limits the scope of Acme's work at the Site to conducting a RI/FS. *See* Consent Order at § V, ¶ A.

Texaco apparently wishes this Court to rely upon its factual assertions to determine that it is not a potentially responsible party under § 107(a) of CERCLA. However, Acme presents evidence that Texaco service stations contracted with Ed's Masonry and Trucking for transportation and disposal of waste. *See* Warpinski Aff. at ¶ 5, Ex. D, E. Accordingly, Texaco may fall within the ambit of § 107(a)(3). In response to Acme's evidence, Texaco notes that the evidence does not show that it arranged for the disposal of any *hazardous* substances. This Court concurs with

Texaco. However, when Texaco filed its motion, no discovery had been set in this case. Accordingly, this Court cannot find that Acme can present no evidence that Texaco arranged for the disposal of hazardous waste.

## III. WAUSAU'S MOTION TO DISMISS

Wausau moves this Court pursuant to Fed.R.Civ.P. 12(b)(1) and (b)(6) for dismissal of Count VII of plaintiff's Complaint and all cross-claims filed by other defendants against Wausau. In support of its motion, Wausau argues: (1) that this Court lacks subject matter jurisdiction over Acme's pendent party claim against Wausau and (2) that the ancillary cross-claims of the principal defendants lack subject matter jurisdiction and fail to state a claim upon which relief may be granted.

### A. Acme's Pendent Party Claim

 Federal courts are courts of limited jurisdiction and have authority to hear only those cases invoking a federal statute or based on diversity jurisdiction. *See Owen Equipment and Erection Company v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978); U.S. Const. art. III, § 2; 28 U.S.C. §§ 1331–1367. This Court has subject matter jurisdiction over Acme's action against the principal defendants based upon two federal statutes, RCRA and CERCLA. *See* 28 U.S.C. § 1331. However, Acme's claims against the insurance defendants are not based upon RCRA, CERCLA, another federal statute or diversity jurisdiction. *See* Complaint at ¶ 3. Rather, Acme requests this Court to exercise discretionary pendent jurisdiction over its state law insurance contract claims against Wausau and the other insurance defendants.

There are two types of pendent jurisdiction: pendent claim jurisdiction and pendent party jurisdiction. *See Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). Pendent claim jurisdiction "arises when a plaintiff brings both federal and related state claims against the same defendant in federal court, and no independent basis of federal jurisdiction

... exists regarding the state claim." *Huffman v. Hains,* 865 F.2d 920, 922 (7th Cir.1989). "On the other hand, pendent *party* jurisdiction arises when a plaintiff brings a federal claim in federal court against one party, and brings a related state-law claim against *another* party without an independent basis of federal jurisdiction." *Huffman* at 922.

In *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 721–29, 86 S.Ct. 1130, 1136–41, 16 L.Ed.2d 218 (1966), the Supreme Court set forth the test for determining a federal court's jurisdiction over pendent claims. *Gibbs* held that pendent jurisdiction, in the sense of judicial power, exists whenever a plaintiff alleges a claim arising under the Constitution, a federal statute or treaty and "the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *Id.* at 725, 86 S.Ct. at 1138 (emphasis in original). "The requisite relationship exists, *Gibbs* said, when the federal and non-federal claims 'derive from a common nucleus of operative fact' and are such that a plaintiff 'would ordinarily be expected to try them in one judicial proceeding.'" *Finley v. U.S.,* 490 U.S. 545, 549, 109 S.Ct. 2003, 2006, 104 L.Ed.2d 593 (1989) (quoting *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138).

In *Aldinger v. Howard,* 427 U.S. 1, 13, 96 S.Ct. 2413, 2419, 49 L.Ed.2d 276 (1976), the Supreme Court made explicit the nontransferability of *Gibbs* to the context of pendent-party jurisdiction. *See also Finley* 490 U.S. at 549, 109 S.Ct. at 2007. Later, in *Finley,* the Supreme Court "assume[d], without deciding, that the Constitutional criterion for pendent-party jurisdiction is analogous to the Constitutional criterion for pendent-claim jurisdiction." *See id.* at 549, 109 S.Ct. at 2006–2007. The *Finley* Court went on to state, however, that "with respect to the addition of parties, as opposed to the addition of only

claims, we will not assume that the full constitutional power has been congressionally authorized, and will not read jurisdictional statutes broadly." *See id.* at 549, 109 S.Ct. at 2007; *see also Aldinger,* 427 U.S. at 17, 96 S.Ct. at 2421 ("Resolution of a claim of pendent-party jurisdiction ... calls for careful attention to the relevant statutory language.")

In this case, even assuming plaintiff meets the constitutional criterion of *Gibbs,* it fails under the requirements of the relevant jurisdictional statute, 28 U.S.C. § 1331. Section 1331 provides:

> The district courts shall have jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

Acme's claim against Wausau does not "arise under the Constitution, laws or treaties of the United States." Accordingly, this Court may not rely on plaintiff's Complaint to obtain subject matter jurisdiction over Wausau. This Court notes that *Finley* has since been effectively overruled by 28 U.S.C. § 1367 (codifying a rule of "supplemental jurisdiction" that permits the inclusion of pendent parties in a federal action). However, § 1367 does not apply to this action because Acme filed its Complaint on July 11, 1989, before the December 1, 1990 effective date of the statute. *See McGraw Edison Co. v. Speed Queen Co.,* 768 F.Supp. 684, 688 (E.D.Wis.1991).

### B. Cross–Claims

Defendant Menard has filed cross-claims against all other defendants, including Wausau, claiming that it is entitled to contribution and/or indemnification if it is found liable to Acme.[13] Menard's cross-claim against Wausau must be dismissed because (1) this Court lacks subject matter jurisdiction and (2) Menard fails to state a claim upon which relief may be granted.

 Menard's cross-claim is a state law claim for which diversity does not exist.

---

13. Defendant's Supreme Casting, Inc., Sun Control Corp., Frank J. Povlick, Inc., Brey's Saw Shop, Dan Brey and Max Brey have also filed cross-claims against Wausau for contribution and/or indemnification. However, after Wausau filed its motion to dismiss, each of these defendants entered into a stipulation dismissing their cross-claims against Wausau. Pursuant to the stipulations, this Court entered orders dismissing the cross-claims.

**1520**

Under the cross-claim, Menard seeks state law contribution and indemnification pursuant to Wisconsin's Direct Action Statute. *See* Wis.Stat. § 632.24 and § 803.04. Menard is a Wisconsin corporation with its principal place of business in Wisconsin. *See* Complaint at ¶ 11. Wausau is a mutual insurance company organized and existing under the laws of the state of Wisconsin with its principal place of business at Wausau, Wisconsin. Wausau Answer at ¶ 10. Consequently, Menard's cross-claim has no independent basis of federal jurisdiction.

In *American Nat. Bank & Trust Co. v. Bailey*, the Seventh Circuit held that "the reasons that led the Supreme Court to state in ... *Gibbs* ... that a district court judge should generally relinquish pendent jurisdiction when the main claim is dismissed before trial also compel the conclusion that he should (subject to a qualification to be noted shortly) relinquish ancillary jurisdiction when the main claim is dismissed before trial...." 750 F.2d 577, 581 (7th Cir.1984) (citing *In re Oil Spill of Amoco Cadiz*, 699 F.2d 909, 913 (7th Cir. 1983)).

The *Bailey* Court noted, however, that "exceptional circumstances may warrant retention of the ancillary claim...." *See id.* For example, the *Bailey* Court stated that a district court would be justified in retaining an ancillary claim, even if the main claim was dismissed before trial, if the statute of limitations would prevent the plaintiff from filing suit in state court based on the claim. *See id.* (citing *Joiner v. Diamond M Drilling Co.*, 677 F.2d 1035, 1043 (5th Cir.1982)). In this case, there appear to be no such limitations problems. In addition, this Court sees no other exceptional circumstances which would warrant the retention of Menard's ancillary claim. Accordingly, it is proper for this Court to dismiss Menard's cross-claim.

In addition, Menard's cross-claim must be dismissed because it fails to state a claim upon which relief may be granted. If Acme is successful in obtaining reimbursement of its costs from Menard pursuant to Claims I and II of its Complaint, Menard would only be responsible for the

share of costs attributable to its conduct. Consequently, even if Menard is held to be liable to Acme, there will be no basis for Menard to attempt to transfer its liability back to Acme's insurers via state law contribution. Furthermore, since Menard presents no evidence that Acme has agreed to indemnify it for any of its liability, Menard cannot bring a proper action for indemnification against Acme or its insurers.

## IV. RELIANCE'S MOTION TO DISMISS COUNTERCLAIMS

Reliance Insurance Company requests this Court to dismiss the counterclaims filed against it pursuant to Rule 12(b)(6). Ranger Insurance Company, Hartford Accident & Indemnity Company, Cigna Property & Casualty Companies join Reliance's motion to dismiss.

Reliance's motion to dismiss addresses the same counterclaims as Wausau's motion to dismiss. This Court's analysis with respect to Wausau's motion applies to Reliance's motion to dismiss. Accordingly, this Court will grant Reliance's motion to dismiss.

## V. ACME'S MOTION TO STRIKE PLEADINGS AND FOR DEFAULT JUDGMENT FOR FAILURE TO ANSWER INTERROGATORIES

Acme moves the Court for orders striking the answers of defendant Richard W. Drexler and defendant Dennis J. Cortte d/b/a Layton Motor Sales and entering judgments by default in favor of Acme for the relief demanded in its Complaint. In the alternative, Acme seeks an order compelling the service of responses by the above defendants to Acme's First Set of Interrogatories and Request for Production of Documents ("Acme's Interrogatories") within ten (10) days. Acme brings its motions for default judgment pursuant to Fed.R.Civ.P. 37(d). Neither Mr. Drexler nor Mr. Cortte filed responses to Acme's motions.

### A. Background

In support of its motions, Acme submits affidavits of its counsel, Ted A. Warpinski.

Mr. Warpinski states that on July 12, 1989, Acme mailed the Summons and Complaint, together with Acme's First Set of Interrogatories, to Mr. Drexler and Mr. Cortte in accordance with Fed.R.Civ.P. 4(c)(2)(C)(ii). Warpinski Aff. at ¶ 2, Exs. A and B. Mr. Drexler answered Acme's Complaint through counsel on August 4, 1989, and Mr. Cortte answered the Complaint through counsel on July 31, 1989. *Id.* at ¶ 3. On October 13, 1989, Mr. Warpinski sent a letter to counsel for the defendants advising the defendants that their response to interrogatories was due. *Id.*

To date, neither defendant has served answers to the interrogatories. *Id.* Mr. Warpinski states that the default of the defendants in answering the interrogatories has seriously hampered Acme in its investigation and preparation of the case. *Id.* at ¶ 4. He states that the interrogatories were designed to obtain information solely within the knowledge of Mr. Drexler and Mr. Cortte and necessary to Acme's preparation for trial. *Id.*

On December 8, 1989, Mr. Warpinski sent a second letter to counsel for defendants, together with a copy of Acme's motion, advising Mr. Drexler and Mr. Cortte that Acme would withdraw its motion if responses to Acme's Interrogatories were served in seven (7) days. *Id.* at ¶ 5, Ex.D.

B. Discussion

Fed.R.Civ.P. 33(a) provides in part:

... interrogatories may, without leave of court, be served upon the plaintiff after commencement of the action and upon any other party with or after service of the summons and complaint upon that party.

Each interrogatory may be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer.... The party upon whom the interrogatories have been served shall serve a copy of the answers, and objections, if any, within thirty (30) days after the service of the interrogatories, except that a defendant may serve answers or objections within forty-five (45) days after service of the summons and complaint upon that defendant....

Under Rule 33(a), defendants Drexler and Cortte had until August 26, 1989 to serve answers to Acme's Interrogatories. As stated above, neither Mr. Drexler nor Mr. Cortte did so. Accordingly, Fed.R.Civ.P. 37(d) applies. Rule 37(d) provides in part:

**Failure of Party to ... Serve Answers to Interrogatories or Respond to Request for Inspection.** If a party ... fails ... (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper Service of the Interrogatories ... the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among other things it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule....

Rule 37(b)(2)(C) authorizes a court to order the striking-out of pleadings or parts thereof and to render a judgment by default against the disobedient parties. These sanctions may be imposed directly, without first issuing an order to compel discovery. *Charter House Ins. Brokers v. New Hampshire Ins.*, 667 F.2d 600, 604 (7th Cir.1981). This Court, nonetheless, is hesitant to enter a default judgment in this matter since the information requested by Acme against Mr. Drexler and Mr. Cortte may be helpful in determining the proper apportionment of liability among the principal defendants. Accordingly, this Court will allow Mr. Drexler and Mr. Cortte an undeserved second chance and order them to comply with Acme's discovery request within ten (10) days of the issuance of this Order. This Court requests Acme to submit a motion for default judgment against defendants Drexler and/or Cortte if either fails to comply.

VI. ACME'S MOTION TO STRIKE AND EXCLUDE PRIOR DEPOSITION TESTIMONY OF EDWARD J. FADROWSKI

Acme requests this Court to issue an order pursuant to Fed.R.Civ.P. 32(a) and

56(e) striking from the record and excluding from evidence the deposition testimony of the now deceased Edward J. Fadrowski taken in two state court actions: *State of Wisconsin v. Ed's Masonry & Trucking, Inc.*, Milwaukee County Court Case No. 642–761, and *Menard, Inc. v. Edward J. Fadrowski*, Milwaukee County Circuit Court Case No. 88–CV–014426. Acme argues that the proponents of Mr. Fadrowski's testimony have not met the requirements necessary to admit it under either Rule 32(a) or 56(e) or any applicable provision of the Federal Rules of Evidence. Defendants Menard, Inc. ("Menard"), Bel–Aire Enterprises Concrete Contractors, Inc. ("Bel–Aire"), Lincoln Savings Bank ("Lincoln"), Pemper Engineering Company, Inc. ("Pemper"), Chromium, Inc. ("Chromium"), Kramer Brass Foundry, Inc. ("Kramer"), Service Painting Corporation ("Service") and Cambridge have submitted response briefs in opposition to Acme's motion. The above defendant's responsive briefs, read in combination, argue that Mr. Fadrowski's deposition testimony is admissible pursuant to four sources of authority: (1) Fed. R.Civ.P. 56(c) and (e); (2) Fed.R.Civ.P. 32(a); (3) Fed.R.Evid. 804(b)(1); and (4) Fed.R.Evid. 804(b)(5).

### A. Federal Rules of Civil Procedure 56(c) and (e)

■ Defendant Chromium argues that courts have frequently treated deposition testimony under circumstances similar to this action as "supporting" or "substitute" affidavits, admissible under Rule 56(c) and (e). In support of this assertion, Chromium cites several cases, including *Hoover v. Switlik Parachute Co.*, 663 F.2d 964 (9th Cir.1981). In *Hoover*, the Ninth Circuit noted that Rule 56 does not require anything more than affidavits in support of a motion for summary judgment. *See Hoover* at 966. The *Hoover* Court went on to state that the depositions submitted in its case met the requirements for affidavits under Rule 56 because "they were made on personal knowledge and set forth facts that were admissible in evidence." *See id.* The court stated that "[i]t would be pointless for [the movant for summary judg-

ment] to have the same witnesses it had deposed file affidavits when [their depositions] met all the requirements for affidavits." *See id.* at 966–967.

The *Hoover* Court noted, however, that if a deposition could not be used at trial, its use would be forbidden in a motion for summary judgment. *See id.* at 967 n. 3. The *Hoover* Court noted a district court opinion which denied the use of a deposition of a decedent in a motion for summary judgment where that deposition was taken before the opposing party had been joined. *See id.* (citing *Taylor v. Rederi*, 249 F.Supp. 326 (E.D.Pa.1966)). The *Taylor* Court held that because the deposition could not be used at trial, its use was forbidden in the motion for summary judgment. *See Taylor* at 328; *see also* Rule 32(a).

Because Mr. Fadrowski is deceased, this case is distinguishable from *Hoover* and falls squarely within the reasoning of the *Taylor* Court. Accordingly, defendants' first argument against Acme's motion to strike fails.

### B. Federal Rule of Civil Procedure 32(a)

■ Rule 32 governs the use of depositions in court proceedings. Rule 32(a) provides in part:

(a) **Use of Depositions.** At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

\* \* \* \* \* \*

(3) The deposition of a witness, whether or not a party may be used by any party for any purpose if the court finds:

(A) that the witness is dead; an action has been brought in any court of the United States or of any State and another action involving the same subject matter is afterward brought between the

same parties or their representatives or successors in interest, all depositions lawfully taken and duly filed in the former action may be used in the latter as if originally taken therefor. A deposition previously taken may also be used as permitted by the Federal Rules of Evidence.

In this case, defendants present no evidence that Acme "was present or represented at the taking of [Mr. Fadrowski's] deposition[s]" or that Acme "had reasonable notice thereof." Thus, Mr. Fadrowski's death does not make his depositions admissible under the introduction paragraph of Rule 32(a).

Nonetheless, Mr. Fadrowski's deposition testimony may be admissible under Rule 32(a) if the prior actions involved "the same subject matter" and were "between the same parties or their representatives or successors in interest." As Acme notes, however, technically it is neither the "representative" or "successor in interest" of either the State of Wisconsin or Menard. As Acme notes, *Black's Law Dictionary* 676 (5th ed. abr. 1979) defines "representative" as interchangeable with "agent," and defines "agent" as follows:

A person authorized by another to act for him, one entrusted with another's business. One who represents and acts for another under the contract or relation of agency. A business representative, whose function is to bring about, modify, affect, accept performance of, or terminate contractual obligations between principal and third persons. One who undertakes to transact some business, or to manage some affair, for another, by the authority and on account of the latter, and to render an account of it. One who acts for or in place of another by authority from him; a substitute, a deputy, appointed by a principal with power to do things which the principal may do. One who deals not only with things, as does a servant, but with persons, using his own discretion as to means, and fre-

quently establishing contractual relations between his principal and third persons. *Id.* at 32. Defendants present no evidence that Acme is ·acting as agent for either Menard or the State of Wisconsin in the litigation.

Likewise, Acme is not technically the "successor-in-interest" for either Menard or the State of Wisconsin. *Black's Law Dictionary* defines "successor-in-interest" as follows:

One who follows another in ownership or control of property. In order to be a "successor-in-interest," a party must continue to retain the same rights as original owner without change in ownership and there must be change in form only and not in substance, and transferee is not a "successor-in-interest." In a case of corporations, the term ordinarily indicates statutory succession as, for instance, when a corporation changes its name but retains same property.

*Id.* at 746. Defendants present no evidence that Acme follows either the State of Wisconsin or Menard in ownership or control of property.

Thus, if the narrow definitions of "representative" and "successor-in-interest" are employed, Mr. Fadrowski's deposition is clearly inadmissible under Rule 32(a). Courts, however, have broadly interpreted the language of Rule 32(a). *See Hub v. Sun Valley Co.*, 682 F.2d 776, 778 (9th Cir.1982).[14] The *Hub* Court stated:

Rule 32(a) requires that the prior and present lawsuits involve the "same subject matter" and "the same parties or their representatives or successors in interest." These requirements have been construed liberally in light of the twin goals of fairness and efficiency. The accepted inquiry focuses on whether the prior cross-examination would satisfy a reasonable party who opposes admission in the present lawsuit. Consequently, courts have required only a substantial identity of issues, and the presence of an adversary with the same motive to cross-examine the deponent.

**14.** Secondary authorities also report a broad construction of Rule 32(a). *See* 4A, J. Moore &

J. Lucas, *Moore's Federal Practice,* ¶ 32.08 (2d ed. 1990); 8 Wright & Miller § 2150.

*Id.* (citations omitted).[15] In *Ikerd v. Lapworth*, 435 F.2d 197, 205 (7th Cir.1970), cited by *Hub*, the Seventh Circuit held that "the presence of an adversary with the same motive to cross-examine the deponent and identity of issues in the case in which the deposition was taken with one in which it is sought to be used provide a well-recognized exception to the rule." [16]

Thus, this Court must determine whether there is a "substantial identity of issues" in this case and the prior Fadrowski matters and whether "an adversary with the same motive to cross-examine" Mr. Fadrowski was present at his depositions.

According to Acme, *State of Wisconsin v. Fadrowski*, involved claims of civil and criminal violations of Wisconsin's environmental laws as set forth in Chapter 144 of the Wisconsin Statutes. *See* Acme's Brief in Support of Motion to Strike. These violations presumedly related to allegations of illegal dumping at the Site by Mr. Fadrowski. This action, likewise, involves the factual issue of what Mr. Fadrowski deposited on the Site. Accordingly, this Court finds that there is a substantial identity of issues between the two cases.

According to Acme, in *Menard v. Fadrowski* Menard sought substantial damages from Fadrowski due to the presence of hazardous wastes on the property it had purchased from him. Since *Menard* also appears to involve the factual issue of what types of substances Mr. Fadrowski deposited on the Site, this Court finds that there is a substantial identity of issues between *Menard* and this action.

In an attempt to demonstrate a lack of identity of issues, Acme notes that Mr.

Fadrowski's prior testimony was given in situations where his personal liability for the conditions of the Site was the only issue. While this Court concurs with Acme that the State of Wisconsin's and Menard's depositions of Mr. Fadrowski did not explore the potential liability of the other principal defendants in this action, Mr. Fadrowski's responsibility for the conditions of the Site remain a major issue in this case. Accordingly, although the *State of Wisconsin* and *Menard* actions did not address all the issues presented in this case, this Court finds that there is a substantial identity of issues between those cases and this case.

This Court also finds that Mr. Fadrowski's deposition in *State of Wisconsin* was performed in the presence of an adversary with the same motive to cross-examine Mr. Fadrowski. In *State of Wisconsin*, the State sought to impose liability on Mr. Fadrowski for his dumping practices. Acme has the same interest in this action. Accordingly, this Court finds that Acme's interest in cross-examining Mr. Fadrowski was adequately protected by the State of Wisconsin and Mr. Fadrowski's testimony from that action is admissible.

It is less clear whether Menard had the same motive to cross-examine Mr. Fadrowski in its action. Menard, like the State of Wisconsin, sought information from Mr. Fadrowski regarding his disposal of hazardous and toxic substances at the Site. However, Menard conducted its deposition of Mr. Fadrowski after the commencement of this action.[17] Because it is possible that Menard's exposure in this action exceeds any amount which it could

---

**15.** The *Hub* Court concurred with the authorities it cited that "the two lawsuits need not involve identical issues and parties." *See id.* However, the Court "reserve[d] for another day deciding whether the presence of an adversary with the same motive to cross-examine is sufficient." *See id.*

**16.** The *Ikerd* Court employed former Fed. R.Civ.P. 26(d). However, 32(a) contains the provisions of Rule 26(d) with very few changes. *See* 8 Wright & Miller, Federal Practice and Procedure, § 2141, p. 448 n. 1. (1970). In pertinent part, former Rule 26(d) provided:

> [W]hen an action in any court of the United States or of any state has been dismissed and another action involving the *same subject matter* is afterward brought between the *same parties* or their *representatives* or *successors-in-interest,* all depositions lawfully taken and duly filed in the former action may be used in the later as if originally taken therefore. (Emphasis added.)

**17.** This action was commenced against Menard and others in July of 1989. In October of 1989, Menard deposed Fadrowski in its state case without any notice to Acme.

recover from Mr. Fadrowski in its state action, this Court cannot find that Menard had the same motive to cross-examine Mr. Fadrowski as plaintiff would have had. Accordingly, Mr. Fadrowski's testimony from *Menard* is not admissible in this action under Rule 32(a).

### C. Federal Rule of Evidence 804(b)(1)

Rule 32(a) provides that a deposition previously taken may also be used as permitted by the Federal Rules of Evidence. Fed.R.Evid. 804(b)(1) provides:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> **(1) Former testimony.** Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

A substantial split in authority exists regarding the meaning of "predecessor-in-interest." *See 11 Moore's Federal Practice*, § 804.04[2] ("the relationship between the party and his predecessor-in-interest is a privity relationship ..."); Wright & Miller, *Federal Practice and Procedure*, § 2150 ("as finally adopted, the rule does not allow a deposition to be used against one who was not a party to the prior proceeding except where a predecessor-in-interest to the present party was a party to the prior proceeding, and rejects the view that a similar interest in motive in cross-examination is sufficient for admissibility"). *But see Lloyd v. American Export Lines, Inc.*, 580 F.2d 1179, 1187 (3rd Cir.

1978) ("the previous party having like motive to develop the testimony about the same material facts is, in the final analysis, a predecessor-in-interest to the present party").

Those sources which apply a limiting construction to the phrase "predecessor-in-interest" rely heavily upon the House of Representatives' rejection of the Supreme Court's proposed rule admitting former testimony if the party against whom it was offered, or a person "with motive and similar interest" to the party, had an opportunity to examine the witness. *See Moore's* at § 804.04[2], 8–264.[18]

> Rule 804(b)(1) as submitted by the court allowed prior testimony of an unavailable witness to be admissible if the party against whom it is offered or a person "with motive and interest similar" to his had an opportunity to examine the witness. The Committee considered that it is generally unfair to impose upon the party against whom the hearsay evidence is being offered responsibility for the manner in which the witness was previously handled by another party. The sole exception to this, in the Committee's view, is when a party's predecessor-in-interest in a civil action or proceeding had an opportunity and similar motive to examine the witness. The Committee amended the Rule to reflect these policy determinations.

H.R.Rep. No. 650, 93rd Cong., 1st Sess. 15 (1973), Report of the House Committee on the Judiciary, reprinted in 4 J. Weinstein & M. Berger, Weinstein's Evidence, at 804–7 & 804–8; *see also Moore's* at § 804.04[2], VIII–265. *Moore's* further notes that the Senate accepted the House modification. *See id. Moore's* then goes on to state:

> (1) FORMER TESTIMONY. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of another proceeding, at the instance of or against a party with an opportunity to develop the testimony by direct, cross, or redirect examination, with motive and interest similar to those of the party against whom now offered. 46 F.R.D. at 377.

---

**18.** Proposed Rule 8–04 provided in part:
(a) GENERAL PROVISIONS. A statement is not excluded by the hearsay rule if its nature and the special circumstances under which it was made offer strong assurances of accuracy and the declarant is unavailable as a witness. (b) ILLUSTRATIONS. By way of illustration only, and not by way of limitation, the following are examples of statements conforming with the requirements of this rule:

The Congressional rejection of the Supreme Court's abolition of the traditional identity of parties requirement had the effect of codifying the common law rule as to the identity of those against whom former testimony may be introduced. The relationship between a party and his predecessor in interest is a privity relationship and has been described as follows:

"The term 'privity' denotes mutual or successive relationships to the same rights of property, and privies are distributed into several classes, according to the manner of this relationship. Thus, there are privies in estate, as donor and donee, lessor and lessee, and joint tenants; privies in blood, as heir and ancestor, and co-parcenaries; privies in representation as executor and testator, administrator and intestate; privies in law, where the law, without privity of blood or estate, casts the land upon another, as by escheat."

*Id.* In this case, Acme is in a privity relationship with neither the State of Wisconsin nor Menard. Accordingly, if the limited construction of "predecessor-in-interest" is applied, Rule 804(b)(1) would not authorize the admission of Mr. Fadrowski's deposition testimony.

The sources which support a broader construction of the phrase "predecessor-in-interest" recognize the House's modification of the Supreme Court's proposed rule. *See, e.g., Lloyd* at 1185. In addition, they recognize that the Senate accepted the House modification. *See id.* Nonetheless, they rely upon the report of the Senate Committee on the Judiciary to demonstrate that the Senate did not see a great difference between the Supreme Court's proposal and the House modification. *See id.*

Former testimony—Rule 804(b)(1) as submitted by the Court allowed prior testimony of an unavailable witness to be admissible if the party against whom it is offered or a person "with motive and interest similar" to his had an opportunity to examine the witness.

The House amended the rule to apply only to a party's predecessor in interest. Although the committee recognizes considerable merit to the rule submitted by the Supreme Court, a position which has been advocated by many scholars and judges, we have concluded that the difference between the two versions is not great and we accept the House amendment.

S.Rep. No. 1277, 93rd Cong., 2d Sess. 28 (1974), *reprinted in* Weinstein at 804–9; *Lloyd* at 1185.

This Court concurs with the *Lloyd* Court that the Senate Committee saw no compelling difference between the Supreme Court's proposal and the House modification. However, the Senate Committee's report does not indicate that it saw no difference between the two versions. Moreover, the Senate Committee's failure to see great import in the changes made by the House does not change the fact that the Senate accepted the House amendment. Accordingly, this Court must apply the House amendment as written, taking into account the House's rejection of the Supreme Court's proposal that Rule 804(b)(1) allow prior testimony of an unavailable witness to be received if the party against whom it was offered, or a person with "motive and interest similar," had an opportunity to examine the witness. For this reason, this Court follows the narrower construction of "predecessor-in-interest" and holds that Mr. Fadrowski's testimony is not admissible under Rule 804(b)(1).

### D. Federal Rule of Evidence 804(b)(5)

Defendants next argue that even if Mr. Fadrowski's deposition does not fall within the parameters of Rule 804(b)(1), it is admissible under 804(b)(5). Rule 804(b)(5) provides:

**(b) Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

**(5) Other exceptions.** A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more

probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

■ In *Zenith Radio Corp. v. Matshushita Electric Ind. Co.*, 505 F.Supp. 1190, 1162–64 (E.D.Pa.1980), a district court noted that testimony "generically of a type covered by another specific hearsay exception, but which fails to meet the precise requirements of that specific exception," should not be admitted under Rule 804(b)(5). The *Zenith* Court noted the reasons for not accepting evidence under a residual hearsay exception when it fails to meet the precise requirements of a specific exception: (1) the legislative history of the Federal Rules of Evidence indicates that Congress intended the residual hearsay exceptions to be used very rarely and only in exceptional circumstances and (2) the basic principle of statutory construction that the specific controls the general. *See id.* at 1263. This Court concurs with the *Zenith* court's reasoning. In addition, this Court notes that the plain language of Rule 804(b)(5) indicates that Congress did not intend for it to cover "near miss" situations. Rule 804(b)(5) requires that the statement have "equivalent circumstantial guarantees of trustworthiness" as the exceptions listed in Rule 804(b)(1)–(4). Since Mr. Fadrowski's deposition testimony in the *Menard* litigation fails to meet the criterion for 804(b)(1), it necessarily does not have the same circumstantial guarantees of trustworthiness as a statement which falls within Rule 804(b)(1).

Because Mr. Fadrowski's testimony in the *Menard* litigation fails under each of the defendants' arguments for admissibility, this Court will not consider that testimony in deciding the summary judgment motions. However, since Mr. Fadrowski's testimony in the *State of Wisconsin* litigation is admissible under Rule 32(a), this Court will consider this testimony when resolving the summary judgment motions.

## VII. SUMMARY

Under the foregoing reasoning, this Court: (1) DENIES the Cambridge defendants' Motion to Dismiss; (2) DENIES Texaco's Motion for Partial Summary Judgment; (3) GRANTS Wausau's Motion to Dismiss; (4) GRANTS Reliance's Motion to Dismiss Counterclaims; (5) DENIES WITHOUT PREJUDICE Acme's Motion to Strike Pleadings and for Default Judgment for Failure to Answer Interrogatories; and (6) GRANTS IN PART and DENIES IN PART Acme's Motion to Strike and Exclude the Prior Deposition and Testimony of Edward Fadrowski.

With respect to Acme's Motion to Strike Pleadings and for Default Judgment, this Court ORDERS Mr. Drexler and Mr. Cortte to comply with Acme's discovery request within ten days of the issuance of this Order. This Court requests Acme to submit a renewed motion for default judgment against defendants Drexler and/or Cortte if either fails to comply with this order.

With respect to Acme's motion to strike the deposition testimony of Mr. Fadrowski, this Court will consider testimony of Mr. Fadrowski given in the *State of Wisconsin* litigation but not that given in the *Menard* litigation.

SO ORDERED.

## ORDER

Pursuant to Federal Rule of Civil Procedure 60(a), the Court hereby amends its Decision and Order of October 21, 1992 in the above-captioned matter as follows:

(1) With respect to plaintiff's motions against Dennis Cortte and Richard Drexler to strike pleadings and enter default judg-

ment, the Court's Order is HEREBY VACATED; and

(2) With respect to Wausau's Motion to Dismiss Count VII of the plaintiff's Complaint and all cross-claims filed by other defendants against Wausau, the Court's Order is HEREBY AMENDED to reflect the fact that Ranger Insurance Company ("Ranger") joined in said motion, and Ranger's Motion to Dismiss is HEREBY GRANTED.

SO ORDERED this 5th day of November, 1992, at Milwaukee, Wisconsin.